UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DENNIS BROWNING,

                        Petitioner,

                                                                                                    **DECISION**
                                                                                                                             and
                                                                                                                             **ORDER**
                        v.

                                                                                                                        14-CV-0831

SUPERINTENDENT OF THE
GOUVERNEUR CORRECTIONAL FACILITY,

                        Respondent.

_____

## INTRODUCTION

      The parties have consented to my jurisdiction pursuant to 28 U.S.C. §636(c). [11]. Petitioner Dennis Browning brings this petition for habeas corpus relief pursuant to 28 U.S.C. §2254. Petitioner was convicted on January 12, 2012 of criminal possession of a weapon in the 2nd degree after a bench trial before Judge Michael L. D'Amico in the New York State County Court, County of Erie. Amended Petition [4]. Petitioner, proceeding *pro se* in this case, argues that his conviction was unconstitutionally obtained based upon (1) an insufficiency of the evidence and (2) the improper introduction of expert testimony relating to coded slang language. Id. at p. 6-7.

## DISCUSSION

**A. Timeliness**

With the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress established a one-year statute of limitations for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to a state court conviction. 28 U.S .C. §2244(d)(1). Under 28 U.S.C. §2244(d)(1), the one-year period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Cook v. New York State Div. of Parole, 321 F.3d 274, 279–80 (2d Cir.2003); Rose v. Lee, 2015 WL 729817, *5 (N.D.N.Y. 2015).

Here, the petitioner's direct appeal to the New York State Appellate Division, Fourth Department was denied on May 2, 2014. The petitioner's application to appeal to the New York State Court of Appeals was denied on August 12, 2014. The original petition for habeas corpus relief was filed in this Court on October 8, 2014 [1]. The amended petition was filed on December 9, 2014. Thus, the petition was timely filed within the one-year statute of limitations.

**B. Exhaustion & Procedural Default**

In the interest of comity and in keeping with the requirements of 28 U.S.C. §2254(b), federal courts will not consider a constitutional challenge that has not first been "fairly presented" to the state courts. See Cornell v. Kirkpatrick, 665 F.3d 369, 375 (2d Cir.2011); Jackson v. Conway, 763 F.3d 115, 133 (2d Cir.2014). A state prisoner seeking federal habeas corpus review must first exhaust his available state remedies with respect to the issues raised in the federal habeas petition. Rose v. Lundy, 455 U.S. 509 (1982). Petitioner bears the burden of proving exhaustion. Colon v. Johnson, 19 F.Supp.2d 112, 119–20 (S.D.N.Y.1998) (citations omitted); Santana v. Lee, 2015 WL 4207230, *12 (N.D.N.Y. 2015).

To meet this requirement, the petitioner must have raised the question in a state court and put the state appellate court on notice that a federal constitutional claim was at issue. "Passage through the state courts, in and of itself, is not sufficient". Picard v. Connor, 404 U.S. 270, 275 (1971). To provide the State with the necessary "opportunity", the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and giving the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. O'Sullivan v. Boerckel, 526 U.S. 838, 845, (1999). See also Wilens v. Superintendent of Clinton Correctional Facility, 2014 WL 28995, *5 (E.D.N.Y. 2014).

It is not enough to refer generally to "due process" or that the trial was "unfair". "The term 'right to a fair trial' is not so particular to as to call to mind a specific right protected by the Constitution". Daye v. Attorney General of the State of New York, 696 F.2d 186, 193 (2d Cir. 1982) ("Obviously not every event in a criminal proceeding that might be described as 'unfair'

would be a violation of the defendant's rights under the Constitution"). However, the petitioner's burden is met where the factual allegations supporting the claim are "well within the mainstream of due process adjudication", or where the courts of a state have previously treated a given fact pattern as appropriate for constitutional analysis. Daye, 696 F.2d at 193–94 (*citing* Johnson v. Metz, 609 F.2d 1052, 1057 (2d Cir.1979)); Mohsin v. Ebert, 626 F. Supp. 2d 280, 299 (E.D.N.Y. 2009).

In his direct appeal to the Fourth Department, petitioner raised two grounds: (1) that the verdict was against the weight of the circumstantial evidence; and (2) that he was denied a fair trial because the witness who interpreted alleged coded slang language used by him did not have the expertise to offer such an interpretation. See Brief for Appellant, attached as Exhibit B to the state court records manually filed with the court [referred hereafter as "Brief for Appellant"].

The petition in this case also asserts two grounds for relief: (1) "inconclusive D.N.A.", and (2) "no use of expert in 'Coded Slang" Amended Petition [4], p. 6-7.  With respect to the first ground, petitioner states the following supporting facts: "Does not show dominion control over weapon in case co-defendant was seen possessing weapon." Id., p. 6]. A review of the claim presented to the Fourth Department upon direct appeal reveals that this same argument was included in the petitioner's weight of the evidence argument before the court. [Brief for Appellant, p. 7-10]. The arguments supporting the second habeas ground for relief [4, p. 7] were also presented to that court [Brief for Appellant, p. 11-16].

However, the respondent asserts that petitioner failed to present both of these claims to the state appellate court in constitutional terms. Respondent's Memorandum of Law [8], p. 8, 13. A review of the Brief for Appellant reflects that the petitioner did not articulate the federal constitutional dimension of either claim, nor did the petitioner rely upon federal authority. The

respondent further argues that the petitioner no longer has a state court remedy with respect to these claims, and thus, the claims are procedurally barred. Id.

"Any challenge to the sufficiency of the evidence would have to have been raised on direct appeal, and cannot be raised in state court now". Ortiz v. Bradt, 2013 WL 5775695, *6 (E.D.N.Y. 2013), citing Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir.2001) ("Petitioner was entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals"). A claim in this posture is deemed exhausted but procedurally barred and cannot be heard on federal habeas corpus review. Ortiz, 2013 WL 5775695, *6, citing Reyes v. Keane, 118 F.3d 136, 139 (2d Cir.1997). Similarly, the petitioner's claim that the expert testimony was erroneously admitted is also in the same posture. Mohsin, 626 F. Supp. 2d at 299 (failure to present constitutional argument challenging qualification of expert resulted in determination that the claim was procedurally barred).

A petitioner can overcome the procedural bar to consideration of his claims if he can demonstrate both "cause" for his default and actual prejudice flowing from the substantive violation of federal law that he alleges; alternatively, the court can also consider the claim on its merits if the failure to do so will result in a fundamental miscarriage of justice. Murray v. Carrier, 477 U.S. 478, 485–86, 495 (1986).

In this case, even if I were to find that petitioner could meet his burden to demonstrate cause and prejudice excusing the procedural default, petitioner's claims would have to be denied on the merits as discussed below. See 28 U.S.C. §2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of [Petitioner] to exhaust the remedies available in the courts of the State").

**C. Standard of Review**

State court findings of historical facts, and inferences drawn from those facts, are entitled to a presumption of correctness. Matusiak v. Kelly, 786 F.2d 536, 543 (2d Cir.), cert. denied, 479 U.S. 805 (1986); *see also* 28 U.S.C. §2254(e)(1) (stating that "a determination of a factual issue made by a State court shall be presumed to be correct"). As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[1], § 2254(d) of Title 28 provides that a habeas corpus petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of that claim:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. The presumption of correctness attaches to findings both by state trial courts and by state appellate courts. Smith v. Sullivan, 1 F. Supp. 2d 206, 210 (W.D.N.Y. 1998) (Larimer, C.J.); Nevius v. Sumner, 852 F.2d 463, 469 (9th Cir. 1988), cert. denied, 490 U.S. 1059 (1989).

In enacting AEDPA, Congress intended to heighten the deference given to state court determinations of law and fact. As noted by Judge Larimer in Smith, AEDPA "has clearly raised the bar for habeas petitioners, placing on them the burden to show by clear and convincing evidence that the state court decision was defective in some way." 1 F.Supp.2d at 210. AEDPA "requires federal courts 'to give greater deference to the determinations made by state courts than they were required to do under the previous law'". Ford v. Ahitow, 104 F.3d 926, 936 (7th Cir.

---

[1] Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214.

1997) (quoting Emerson v. Gramley, 91 F.3d 898, 900 (7th Cir. 1996), cert. denied, 520 U.S. 1122 (1997)); *see also* Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir. 1997) ("AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal determinations.").

**D. Trial Record**

Petitioner was convicted after a bench trial in state court that commenced on December 12, 2011. On November 12, 2010, Buffalo Police Officers Ann Devaney, Jasen Whitehead and Jonathan Pietrzak responded to a call that a burglary was in progress at 18 Pershing Street in the City of Buffalo (T. 22).[2] While *en route*, the officers were advised that the call was updated to reflect "shots fired" at the house. Id. Officer Devaney testified that when she arrived at the house, the front door was ajar and appeared to have been kicked in. (T. 24). She stated that as she and the other two officers announced their presence and were entering the house, she heard glass breaking and saw two men running toward the rear of the house (T. 24, 72). Officer Pietrzak went back outside and around to the side of the house to see if anyone was trying to escape through a window (T. 67, 72-73).

Officers Devaney and Whitehead continued into the house. When they arrived at the kitchen, they observed two men, petitioner and Adrian Dixon, in the bathroom off of the kitchen (T. 25). Dixon was wearing a brown hoodie; while petitioner was wearing a black hoodie (T. 25, 27). According to Officer Devaney, the officers directed the men to come out with their hands up, but the men did not comply (T. 24-25). She stated that Dixon was pounding on the bathroom window attempting to break it. Officer Devaney testified that she could not see anything in

---

[2] References to ("T. ") are to the pages of the state court trial transcript manually filed with this Court.

Dixon's hands as he was trying to break the double pane window (T. 47-48). She also testified that she did not see petitioner's hands (T. 27, 38).

Officer Devaney stated that the men did not respond to the officers' commands to come out of the bathroom for a "good minute, minute and a half" (T. 29). Dixon eventually succeeded in breaking the window. Both Officer Devaney, who was in the kitchen trying to get the men to come out of the bathroom (T. 26, 62), and Officer Pietrzak, who was outside the house near the bathroom window (T. 73), testified that they saw Dixon throw something out of the window. Officer Pietrzak testified that he saw something drop, but did not know what it was at the time. When he realized that the window was too small to allow for escape, he returned to the inside of the house to assist Officers Devaney and Whitehead (T. 74). At this point both Dixon and the petitioner were handcuffed and placed under arrest (T. 75). Dixon had cuts on his arm from sticking them through the window (T.30).

After Dixon and the petitioner were restrained, Officer Pietrzak went back outside to see what was dropped from the window. With the help of Officer Devaney shinning her flashlight from the bathroom window, he found a 9mm gun on the ground a few feet in front of the bathroom window. (T. 31-32, 76). The gun was found lying on top of leaves that had previously fallen (T. 112). The gun was loaded (T. 78).

A search of the house revealed that two other individuals had been hiding upstairs. One, eventually identified as Darryl Williams, was hiding in the attic closet (T. 32, 89, 124). The other individual, who was not definitively identified in the record, had apparently gone out a second floor window and was hiding on the roof of the front porch (T. 32, 89, 124). Both Williams and the other individual were wearing pajamas when found by the police (T. 89). Williams testified

that he and the other individual[3] were asked to housesit by the owner, who was incarcerated (T. 122). According to Williams, sometime around 4:00 a.m. on November 12, 2011, he (and his housemate) were awoken by sounds of several people trying to enter the house (T. 122, 127). Williams stated that because the door was already broken, he placed a ladder against the front door to keep the men out (T. 136-37). Williams stated that the men were trying to break into the house (T. 126, 131). When the men were able to gain entry into the house, Williams and the other house sitter ran upstairs (T. 138). The police arrived shortly thereafter. Williams stated that he did not call the police (T. 137). He also testified that neither he nor the other house sitter had a gun (T. 124).

Michelle Lillie, a forensic biologist, testified that DNA tests were conducted with respect to material found on the gun (T. 193-98). Tests excluded the presence of Dixon's DNA on the gun (T. 206). However, petitioner's DNA could not be excluded. Lillie testified that "[t]he partial major DNA profile obtained from the swab from the handgun was the same as the known buccal specimen from" petitioner (T. 206). Lillie stated the test indicated that the similarities between the DNA found on the gun and petitioner's DNA was such that one of every 153.5 million people in the United States would have such similarities (T. 206-09). In other words, since there are approximately 300 million people in the United States, only two people in the country could have produced those test results (T. 209).[4] One of them, petitioner, was seen in the bathroom at the time the firearm was thrown out of the bathroom window.

Erie County Deputy Sheriff Joseph Higgins testified that he was responsible for monitoring and recording inmate phone calls at the Erie County Holding Center. Deputy Sheriff Higgins stated that while petitioner was being held at the Erie County Holding Center on

---

[3] Williams claimed not to know the name of this individual (T. 122).

[4] According to Lillie, a standard of one out of 307 billion is used to a definite match excluding all others. (T. 210).

November 13, 2010, the day after his arrest in this incident, petitioner made a phone call that was recorded (T. 157).

Buffalo Police Detective Marvin Sanford testified as an expert on street slang (T. 162-63). He stated that he had been a police officer for more than 24 years (T. 162), that he had experience with street slang, that he had to communicate with people who used street slang, and that he used street slang in his everyday life growing up (T. 163). Sanford stated that he was familiar with petitioner, having interviewed him in the past (T. 167). He testified that he listened to the recorded phone call involving the petitioner, and that he recognized petitioner's voice on that phone call (T. 168). Sanford stated that the word "joint" could have multiple meanings and that "you can use it to describe or replace the meaning, if you're talking in code, to use that word in place of something – a word you're trying to describe . . . when you want to say something but you don't want somebody to overhear you saying the word" (T. 164-65). Sanford stated that petitioner had said something to the effect that petitioner had "dropped my joint or they found my joint and my shits all over that joint", and that this was coded language for petitioner talking about the gun (T. 168, 176). The recorded call was played at the trial (T. 174). Petitioner was actually heard to have stated "my joints are all over that shit." Id. Sanford testified that he believed petitioner could have been referring to his fingerprints (T. 183).

In his summation, petitioner's attorney argued that not one witness had testified that they saw the petitioner with the gun (T. 240). He also argued that petitioner had gone to the house to smoke marijuana, and that petitioner's use of the word "joint" referred to marijuana (T. 242-43). Finally, he argued that the DNA evidence did not result in a match that was conclusive (T. 245). After the conclusion of the trial on December 13, 2011, Judge D'Amico stated that he was going to review the evidence (T. 254). On December 14, 2011, Judge D'Amico found both Dixon and

petitioner guilty of criminal possession of a weapon in the second degree pursuant to New York Penal Law §265.03.3 (T. 232, 257).[5]

**E.  Sufficiency of the Evidence**

Petitioner lists "inconclusive DNA" as his first ground for relief, adding that it "does not show dominion control over weapon in case co-defendant was seen possessing weapon." [4, p. 6].  Petitioner does not otherwise characterize this claim. In his state court appeal, this claim was presented as being based upon the argument that the verdict was against the weight of the evidence. [Brief for Appellant, p. 6].  A claim that the verdict is against the weight of the evidence is not cognizable upon habeas corpus review. McKinnon v. Superintendent, Great Meadow Correctional Facility, 422 F. App'x 69, 75 (2d Cir.2011) (Summary Order) (collecting cases and noting that "the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus").

While a "weight of the evidence" claim is based upon state law, a "sufficiency of the evidence" claim is based upon federal due process principles which may be reviewed in connection with an application for habeas corpus relief. Correa v. Duncan, 172 F.Supp.2d 378, 381 (E.D.N.Y.2001); Mitchell v. Sheahan, 2015 WL 5089138, *4 (E.D.N.Y. 2015).  However, even if I were to construe petitioner's claim as being one asserting insufficiency of the evidence, it fares no better.

---

[5]   New York Penal Law §265.03.3, states in relevant part: "A person is guilty of criminal possession of a weapon in the second degree when: . . .  (3) such person possesses any loaded firearm. Such possession shall not, except as provided in subdivision one or seven of section 265.02 of this article, constitute a violation of this subdivision if such possession takes place in such person's home or place of business. Criminal possession of a weapon in the second degree is a class C felony."

As noted above, historical facts and inferences determined by the state court are subject to a presumption of correctness. Further, petitioner carries a heavy burden to prevail in a habeas challenge to the sufficiency of evidence to support a state-court conviction. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt". Jackson, 443 U.S. at 319. The AEDPA has increased the deference required under Jackson, "establish[ing] a standard that is twice deferential". Santone v. Fischer, 689 F.3d 138, 148 (2d Cir. 2012). Under AEDPA, the federal court on habeas review may not overturn the state-court decision rejecting a sufficiency challenge unless the decision was "objectively unreasonable". Id. (citations omitted).

Here, applying the presumption of correctness and inferences discussed above, the record reflects that petitioner, and at least one other individual, entered a house at 4:00 a.m. without the permission of the occupants, that police went to scene to investigate a call that a burglary was in progress and shots were fired, that the petitioner was found by the police in the bathroom with Dixon, that Dixon broke the bathroom window and threw something out the window, that the item thrown out the window was discovered to be a handgun, and that petitioner's DNA was found on the handgun. Notwithstanding the absence of testimony that petitioner was seen holding the gun or passing the gun to Dixon to be thrown out of the window, the presence of petitioner's DNA on the handgun under these circumstances is sufficient to establish petitioner's constructive possession of the weapon and supports the petitioner's conviction. See People v. Bellamy, 118 A.D.3d 1113, 1114 (3rd Dept. 2014), leave to appeal denied, 25 N.Y.3d 1159 (2015) ("Exclusive access . . . is not required to sustain a finding of constructive possession; . . . Here, the People established that defendant resided in the first-floor apartment . . . and the loaded

handgun was found in a man's boot located in a hallway leading to that apartment . . . and the People established the presence of defendant's DNA on the weapon. The rational inferences to be drawn from this evidence are sufficient to support the conclusion that defendant exercised dominion and control over the weapon").

In his state court appeal, petitioner relied heavily on People v. Graham, 107 A.d.3d. 1296 (3rd Dept. 2013). In that case, a police officer found a gun with the defendant's DNA on it in front of a house, but could testify only that the defendant was in the "general area". Graham. 107 A.D.3d at 1297.  The court found that the defendant's conviction was against the weight of the evidence. Id.  Graham does not help petitioner because the testimony in this case places petitioner in the same bathroom at the same time the gun bearing his DNA was thrown out of the window. Moreover, although the court in Graham determined that the conviction was against the weight of the evidence, it did not find that the evidence was legally insufficient. In fact, it expressly held the opposite: "[a]lthough defendant's conviction is supported by legally sufficient evidence, the conviction is against the weight of the evidence". Id.

Under the circumstances in this case, and particularly in light of the deferential standard applied to state court factual findings, I cannot conclude that the evidence presented in the state court trial was insufficient to establish petitioner's constructive possession of the handgun in question.

**F.  Expert Testimony**

Petitioner also argues that Sanford was not "a reliable source for coded slang" and gave different meanings to the word "joint".  Also, petitioner points out that Sanford admitted that he was guessing. Amended Petition [4], p. 7.  This argument relates to a recorded phone

conversation in which petitioner stated: "my joints is all over that shit" (T. 174). In his state court appeal, petitioner's primary argument with respect to this claim was that expert slang interpretation evidence was only admissible in narcotics cases, and since there were no narcotics charges in this case, such evidence should not have been allowed. [Brief for Appellant, p. 13]. The Fourth Department rejected this argument, citing cases where such expert slang testimony was admitted in non-narcotics cases. Amended Petition [4], p. 11.[6] The Fourth Department also determined that Sanford was qualified to interpret the language based upon his experience. Id. Sanford did testify that the word "joint" could have several different meanings and admitted that he was only guessing based upon his experience (T. 184). Judge D'Amico noted the defendant's objections to this testimony and stated that he was "hearing this for what it's worth" (T. 164). The record does not reflect what, if any, weight Judge D'Amico gave to this testimony.

In any event, discretionary state court evidentiary rulings normally do not rise to a constitutional level so as to be cognizable in a federal habeas corpus proceeding, absent a showing that the challenged rulings violated a specific constitutional right. "Under Supreme Court jurisprudence, a state court's evidentiary rulings, even if erroneous under state law, do not present constitutional issues cognizable under federal habeas review." McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 72-73 (2d Cir. 2011), *citing* Hawkins v. Costello, 460 F.3d 238, 244 (2d Cir.2006); *see also* Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Such a claim does not reflect constitutional dimensions unless the evidentiary error was "so pervasive as to have denied [defendant] a fundamentally fair

---

[6] For example, the Fourth Department cited People v. Inoa, 109 A.D.3d 765, 766 (2013) aff'd, 25 N.Y.3d 466 (2015) (the court in a murder case properly exercised its discretion in permitting a detective to testify as an expert with regard to coded or unexplained language contained in recorded conversations, and the detective did not go beyond the proper bounds of expert testimony).

trial". Collins v. Scully, 755 F.2d 16, 18 (2d Cir.1985); *see also* Piedra v. Lavalley, 2014 WL 2446151, *5 (E.D.N.Y. 2014). The record in this case does not reflect that the admission of Sanford's testimony denied petitioner a fundamentally fair trial.

## CONCLUSION

Based on the above, the amended petition for habeas corpus relief [4] is denied. I hereby certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

Dated: December 15, 2015

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge